UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 22-1655 JGB (KKx)** | Date | May 3, 2023 |
|---|---|---|---|
| Title | *Jasmine Gamez v. Zero Day Nutrition Company, et al.* | | |

| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |
|---|---|

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** Order (1) GRANTING Defendant's Motion to Dismiss (Dkt. No. 20); (2) VACATING the May 8, 2023 Hearing; (3) DENYING AS MOOT Parties' Requests to Appear Remotely at Hearing (Dkt. Nos. 24-25) (IN CHAMBERS)

Before the Court is a motion to dismiss filed by Defendant Day One Distribution, LLC ("Defendant"). ("Motion," Dkt. No. 20.) The Court determines this matter is appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering all papers filed in support of and in opposition to the Motion, the Court **GRANTS** Defendant's Motion. The May 8, 2023 hearing is **VACATED**.

## I.  BACKGROUND

On September 21, 2022, Plaintiff Jasmine Gamez ("Plaintiff" or "Ms. Gamez") filed a putative class against complaint against Zero Day Nutrition Company and Does 1-25. ("Complaint," Dkt. No. 1.) On November 17, 2022, Plaintiff filed a first amended complaint against Day One Nutrition, LLC and Does 1-25. ("FAC," Dkt. No. 10.) The same day, Plaintiff filed a notice of voluntary dismissal as to Zero Day Nutrition Company. (Dkt. No. 12.) On February 27, 2023 and March 1, 2023, the parties stipulated to the filing of a second amended complaint. (Dkt. Nos. 15-16.) On March 10, 2023, the Court approved the stipulation. (Dkt. No. 17.)

On March 13, 2023, Plaintiff filed a second amended complaint against Defendant and Does 1-25. ("SAC," Dkt. No. 18.) The SAC alleges three causes of action: (1) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, et seq.; (2)

violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, et seq.; (3) violation of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, et seq. (See id.)

On March 24, 2023, Defendant filed the Motion. (Motion.) In support of the Motion, Defendant filed a request for judicial notice ("RJN," Dkt. No. 20-2) and a declaration of Brandyn Mitchell Alejos. ("Alejos Declaration," Dkt. No. 20-3).[1] On April 10, 2023, Plaintiff filed an opposition. ("Opposition," Dkt. No. 22.) On April 17, 2023, Defendant replied. ("Reply," Dkt. No. 23.)

On April 27, 2023, Defendant filed a request to appear remotely at the May 1, 2023 hearing on the Motion. (Dkt. No. 24.) The same day, Plaintiff filed a request to appear remotely. (Dkt. No. 25.)[2] On April 28, 2023, the Court continued the hearing on the Motion from May 1, 2023 to May 8, 2023. (Dkt. No. 26.)

## II. FACTUAL ALLEGATIONS

Plaintiff alleges the following facts, which are assumed to be true for purposes of the Motion, except those contradicted by the facts of which the Court has taken judicial notice. See Mullis v. U.S. Bankr. Court, 828 F.2d 1385, 1388 (9th Cir. 1987); Marder v. Lopez, 450 F.3d 445, 448 (9th Cir. 2006); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir.), opinion amended on denial of reh'g, 275 F.3d 1187 (9th Cir. 2001).

Defendant Day One Distribution, LLC, doing business as Glaxon, manufactures and sells a popular line of protein power nutrition/supplement products throughout California. (SAC ¶ 1.) To increase profits at the expense of consumers and fair competition, Defendant deceptively sells its products in oversized packaging that does not reasonably inform consumers that they are nearly half-empty. (Id.) As part of its "slack-fill scam," Defendant's product, 1.8 lb "Glaxon PROTOS Whey Protein Blend" ("the Product"), is sold in an opaque container that is more than 60 percent empty. (See id. ¶¶ 1-2.) The Product contains an unlawful amount of empty space or "slack-fill"; Defendant underfills the Product for no lawful reason. (Id. ¶ 2.)

Plaintiff Jasmine Gomez purchased the Product for personal use in August 2021 from a GNC store in Whittier, CA for approximately $59.99. (Id. ¶ 7.) In making her purchase, Plaintiff relied upon the opaque packaging, including the size of the container and product label. (Id.)

---

[1] Exhibit A of the RJN, photographic images of the packaging for the 1.8 LBS Glaxon PROTOS Whey Protein Blend product in the Cookies n' Milk flavor allegedly purchased by Plaintiff, is properly subject to judicial notice because it is incorporated by reference into the SAC and Defendant establishes the exhibit's authenticity through the Alejos Declaration; moreover, the exhibit's authenticity is not disputed and the RJN is unopposed. See Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005); Shalikar v. Asahi Beer U.S.A., Inc., 2017 WL 9362139, at *2 (C.D. Cal. Oct. 16, 2017). The Court therefore GRANTS Defendant's RJN.

[2] The requests to appear remotely at the hearing on the Motion are DENIED AS MOOT.

"Plaintiff understood the size of the container and product label to indicate that the amount of nutrition/supplement powder contained therein was commensurate with the size of the container, and she would not have purchased the Product, or would not have paid a price premium for the Product, had she known that the size of the container and product label were false and misleading." (Id.)  "If the Product's packaging and labels were not misleading, then Plaintiff would purchase the Product in the future.  Plaintiff intends to purchase the Product in the future but cannot reasonably do so without an injunctive relief order from the Court ensuring Defendant's packaging, labeling, and filling of the Product is accurate and lawful, at which point she will reasonably be able to rely upon Defendant's representations about the Product." (Id.)

"The other information that Defendant provides about the quantity of powder on the front and back labels of the Product does not enable reasonable consumers to form any meaningful understanding about how to gauge the quantity of contents of the Product as compared to the size of the container itself.  For instance, the front of the Product's packaging does not have any labels that would provide Plaintiff with any meaningful insight as to the amount of nutrition supplement/powder to be expected, such as a fill line." (Id. ¶ 23.)

"Disclosures of net weight and serving sizes in ounces, pounds, or grams do not allow the reasonable consumer to make any meaningful conclusions about the quantity of nutrition supplement/powder contained in the Products' containers that would be different from their expectation that the quantity of nutrition supplement/powder is commensurate with the size of the container." (Id. ¶ 24.)

A competitor's product, SuperiorSource Keto Collagen, is also packaged in an opaque container, but is filled approximately 90 percent with protein powder.  (Id. ¶ 37.)

Plaintiff seeks to represent a class defined as "[a]ll persons who purchased the Product in California for personal use and not for resale during the four years prior to the filing of [the Complaint] to the present."  (Id. ¶ 46.)

### III. LEGAL STANDARD

**A. Rule 12(b)(1)**

"A jurisdictional challenge under Rule 12(b)(1) may be made either on the face of the pleadings or by presenting extrinsic evidence." Warren v. Fox Fam. Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003).  Thus, a jurisdictional challenge can be either facial or factual. White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000).

In a facial attack, the moving party asserts that the allegations contained in the complaint are insufficient on their face to invoke federal jurisdiction. Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004).  When evaluating a facial attack, the court must accept the factual allegations in the plaintiff's complaint as true. Whisnant v. United States, 400 F.3d 1177, 1179 (9th Cir. 2005).

"By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." Safe Air for Everyone, 373 F.3d at 1039. In resolving a factual challenge, the court "need not presume the truthfulness of the plaintiff's allegations" and "may look beyond the complaint to matters of public record without having to convert the motion into one for summary judgment." White, 227 F.3d at 1242. "Where jurisdiction is intertwined with the merits, [the court] must 'assume the truth of the allegations in the complaint . . . unless controverted by undisputed facts in the record.'" Warren, 328 F.3d at 1139 (quoting Roberts v. Corrothers, 812 F.2d 1173, 1177 (9th Cir. 1987)).

**B.  Rule 12(b)(6)**

Under Rule 12(b)(6), a party may bring a motion to dismiss for failure to state a claim upon which relief can be granted. Rule 12(b)(6) must be read in conjunction with Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that a pleader is entitled to relief," in order to give the defendant "fair notice of what the claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007); see Ileto v. Glock Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003). When evaluating a Rule 12(b)(6) motion, a court must accept all material allegations in the complaint—as well as any reasonable inferences to be drawn from them—as true and construe them in the light most favorable to the non-moving party. See Doe v. United States, 419 F.3d 1058, 1062 (9th Cir. 2005); ARC Ecology v. U.S. Dep't of Air Force, 411 F.3d 1092, 1096 (9th Cir. 2005); Moyo v. Gomez, 32 F.3d 1382, 1384 (9th Cir. 1994). Courts are not required, however, "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." In re Gilead Scis. Sec. Litig., 536 F.2d 1049, 1055 (9th Cir. 2008) (internal citation and quotation omitted). Courts also need not accept as true allegations that contradict facts which may be judicially noticed. See Mullis, 828 F.2d at 1388;

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations omitted). Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id.

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Id. at 570; Ashcroft v. Iqbal, 556 U.S. 662 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556). The Ninth Circuit has clarified that (1) a complaint must "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and (2) "the factual allegations that are taken as true must plausibly suggest an entitlement to

relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

### C. Rule 9(b)

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). The allegations must "be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." Kearns v. Ford Motor Co., 567 F.3d 1120, 1124 (9th Cir. 2009) (alteration in original) (internal quotation marks omitted). To comply with Rule 9(b), "a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." Moore v. Mars Petcare US, Inc., 966 F.3d 1007, 1019 (9th Cir. 2020).

### D. Rule 15

Federal Rule of Civil Procedure 15 ("Rule 15") provides that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). The Ninth Circuit has held that "'[t]his policy is to be applied with extreme liberality.'" Eminence Capital, L.L.C. v. Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003) (quoting Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 712 (9th Cir. 2001)). Generally, a "district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by allegation of other facts." Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and citation omitted). Despite this liberal standard, leave to amend may be denied if amendment would be futile to rectify the deficiencies in a pleading. Leadsinger, Inc. v. BMG Music Pub., 512 F.3d 522, 532 (9th Cir. 2008).

## IV. DISCUSSION

Defendant argues that (1) Plaintiff lacks Article III standing to pursue injunctive relief; (2) Plaintiff's slack fill state law claims are barred as a matter of law under California's safe harbor doctrine; and (3) Plaintiff fails to state a claim because she does not plausibly allege a reasonable consumer would be deceived. (See Motion.) For the reasons below, the Court agrees with Defendant that the SAC is subject to dismissal because Plaintiff fails to state a claim under any of her causes of action. As such, the Court need not reach Defendant's additional arguments for dismissal. See Workman v. Plum Inc., 141 F. Supp. 3d 1032, 1037 (N.D. Cal. 2015) (holding that plaintiff failed to state a claim under the reasonable consumer test and declining to reach additional argument for dismissal, including standing). Additionally, although the Motion references the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), none of Defendant's arguments for dismissal turn on them; the Court finds Plaintiff has failed to adequately plead violations of the UCL, FAL and CLRA under Rule 12(b)(6) plausibility pleading standards and need not assess the application of Rule 9(b). (See Motion at 1.)

A. **UCL, FAL and CLRA Claims: Deception of Reasonable Consumers**

Plaintiff brings claims under three California consumer protection statutes—the UCL, FAL, and CLRA—that cover "interrelated harms." See Fisher v. Monster Beverage Corp., 656 F. App'x 819, 822 (9th Cir. 2016). To state a claim under the UCL, FAL, or CLRA, a plaintiff must allege the defendant's purported misrepresentations are likely to deceive a reasonable consumer. See Williams v. Gerber Products Co., 552 F.3d 934, 938 (9th Cir. 2008) (explaining that unless the advertisement at issue targets a particularly vulnerable group, courts must evaluate claims for false or misleading advertising from the perspective of a reasonable consumer); see also Reid v. Johnson & Johnson, 780 F.3d 952, 958 (9th Cir. 2015) ("It is true that violations of the UCL, FAL, and CLRA are evaluated from the vantage point of a 'reasonable consumer.'"); Kim v. Benihana, Inc., 2021 WL 1593248, at *3 (C.D. Cal. Feb. 24, 2021) ("Claims brought pursuant to the UCL, FAL, and CLRA are 'governed by the reasonable consumer test.'") (citation and internal quotations omitted).

"Whether an advertisement is 'misleading' must be judged by the effect it would have on a reasonable consumer." Davis v. HSBC Bank Nevada, N.A., 691 F.3d 1152, 1161 (9th Cir. 2012). The standard requires "more than a mere possibility that [Defendant's] label 'might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner.'" Ebner v. Fresh, Inc., 838 F.3d 958, 965 (9th Cir. 2016) (quoting Lavie v. Procter & Gamble Co., 105 Cal. App. 4th 496, 508 (2003)). Rather, plaintiffs must plausibly allege "a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." Id. Put another way, "[a] representation does not become 'false and deceptive' merely because it will be unreasonably misunderstood by an insignificant and unrepresentative segment of the class of persons to whom the representation is addressed." Lavie, 105 Cal. App. 4th at 507 (citation omitted). "A complaint is sufficient with regard to all three statutes when it alleges that (i) a representation was made, (ii) it was false or likely to mislead a reasonable consumer, (iii) the plaintiff saw and relied on the representations for their truth in purchasing the item, and (iv) the plaintiff would not have bought the item otherwise." Fisher, 656 F. App'x at 822. Generally, a plaintiff's "selective interpretation of individual words or phrases from a product's labeling cannot support a CLRA, FAL, or UCL claim." Hairston v. S. Beach Beverage Co., 2012 WL 1893818, at *4 (C.D. Cal. May 18, 2012). To the contrary, courts look to the "promotion as a whole" to determine if a product's advertising is deceptive. See Freeman v. Time, Inc., 68 F.3d 285, 290 (9th Cir. 1995).

At the motion to dismiss stage, a court can dismiss a complaint for failure to state a claim only where it can conclude as a matter of law that members of the public are not likely to be deceived by the advertisement. Moore v. Mars Petcare US, Inc., 966 F.3d 1007, 1017 (9th Cir. 2020). Whether an advertisement is deceptive will usually be a question of fact not appropriate for decision on a motion to dismiss. See id.; Williams, 552 F.3d at 938. Nonetheless, the "primary evidence in a false advertising case is the advertising itself," Brockley v. Moore, 107 Cal. App. 4th 86, 100 (2003), while "courts regularly review product packaging during a motion to dismiss." Sinatro v. Mrs. Gooch's Nat. Food Markets, Inc., 2023 WL 2324291, at *11 (N.D. Cal. Feb. 16, 2023). "[W]here plaintiffs base deceptive advertising claims on unreasonable or

fanciful interpretations of labels or other advertising, dismissal on the pleadings may well be justified." Moore v. Trader Joe's Co., 4 F.4th 874, 882–83 (9th Cir. 2021) (citation omitted). Moreover, "a 'rational consumer' would not 'simply assume' something about a product that they can 'plainly see.'" Sinatro, 2023 WL 2324291, at *10 (quoting Ebner, 838 F.3d at 966). As such, it is appropriate to dismiss an action at the pleading stage for failure to state a claim when "it [is] not necessary to evaluate additional evidence regarding whether the advertising [is] deceptive, since the advertisement itself [makes] it impossible for the plaintiff to prove that a reasonable consumer was likely to be deceived." Williams, 552 F.3d at 939; see also Ebner, 838 F.3d at 966-68 (finding that the plaintiff "has not alleged, and cannot allege, facts to state a plausible claim that the Sugar label is false, deceptive, or misleading" and upholding dismissal of claims without leave to amend); Davis, 691 F.3d at 1162 (upholding dismissal where plaintiff's theory "defies common sense" and the advertising "was not likely to deceive a reasonable consumer). "Thus, where a [c]ourt can conclude as a matter of law that members of the public are not likely to be deceived by the product packaging, dismissal is appropriate." Hairston, 2012 WL 1893818, at *4.

California federal district courts frequently dismiss claims asserting violations of the UCL, FAL, and CLRA based on slack fill theories at the pleadings stage, dismissing with or without leave to amend depending on whether the pleadings can be cured by allegation of other facts. See, e.g., Macaspac v. Henkel Corp., 2018 WL 2539595, at *6 (S.D. Cal. June 4, 2018) (dismissing without leave to amend); Martinez-Leander v. Wellnx Life Scis., Inc., 2017 WL 2616918, at *8 (C.D. Cal. Mar. 6, 2017) (dismissing with leave to amend); Buso v. Vigo Importing Co., 2018 WL 6191390, at *6 (S.D. Cal. Nov. 28, 2018) (dismissing with leave to amend); Kennard v. Lamb Weston Holdings, Inc., 2019 WL 1586022, at *11 (N.D. Cal. Apr. 12, 2019) (dismissing plaintiff's CLRA, UCL and FAL claims based on a consumer deception theory of liability without leave to amend); Bush v. Mondelez Int'l, Inc., 2016 WL 5886886, at *5 (N.D. Cal. Oct. 7, 2016) ("Bush I") (dismissing claims with leave to amend while acknowledging "it is not immediately obvious how [the plaintiff's] case could be saved by amendment"); Bush v. Mondelez Int'l, Inc., 2016 WL 7324990, at *4 (N.D. Cal. Dec. 16, 2016) ("Bush II") (dismissing claims without leave to amend because plaintiff had failed to cure deficiencies outlined in Bush I).

The Court has taken judicial notice of the photographs that depict the Product from every angle, including its front and back labels. (See RJN Ex. A.) Based on how the Product is actually packaged, as opposed to some of the allegations in the SAC that contain material omissions regarding its packaging (and possibly misstatements), Defendant argues that a reasonable consumer is unlikely to be deceived by the Product's packaging for at least four reasons: (1) the protein powder contents and empty space can be viewed through the "translucent" container's sides and bottom; (2) the container has an actual product fill-line space located between the two vertical edges of the label; (3) the front label accurately discloses the net weight and number of servings of the Product in the container; and (4) a consumer can hear and feel the shifting contents within the container before purchase. (See Motion at 15.)

While some of the cases cited by the parties are informative and discussed above and below, an order from the Northern District of California decided less than two weeks ago (and

after briefing on the Motion had closed), is most instructive. See Taylor Costa v. Reliance Vitamin Co, Inc., 2023 WL 2989039 (N.D. Cal. Apr. 18, 2023). As originally alleged in Reliance, the plaintiff claimed that the defendant's PlantFusion Complete Protein Creamy Vanilla Bean Protein Powder was deceptive because the product's opaque packaging obscured the fact that it was only half-filled with protein powder, while the remaining space was "slack-fill." See Taylor Costa v. Reliance Vitamin Co, Inc., Case No. 3:22-cv-04670-WHO (N.D. Cal.), Order Re: Motion to Dismiss, Dkt. No. 23, at 1-2. The plaintiff alleged, as does Ms. Gamez here, that a "substantially similar" protein powder product was filled about ninety percent with protein powder. (Indeed, the SAC appears to reference the same competitor's product.) See id. at 2. Judge Orrick took judicial notice of the product's labeling and found the first amended complaint failed to state a claim under the reasonable consumer test because the label "shows that one scoop makes one 10 to 12 ounce beverage, and that there are 15 scoops per container," which "may be sufficient to quantify the product, put a reasonable consumer on notice, and differentiate this from other slack-fill cases —at least until Costa amends her complaint to account for the quantification information." Id. at 13. The plaintiff alleged that a consumer would still have to perform "some basic math to determine how many drinks the powder makes[,] which is not a reasonable expectation of a typical consumer"; Judge Orrick granted her leave to amend to "plead facts showing that reasonable consumers will not do this math," but did not credit the argument unsupported by the allegations in the complaint. See id. at 14.

Based on the revised allegations in the first amended complaint, Judge Orrick held that that the plaintiff stated a claim for relief under the reasonable consumer test. See Reliance, 2023 WL 2989039, at *2. The court's discussion began with the premise that, "[i]n accordance with Ebner, [838 F.3d 958] many district courts have found that where the package itself discloses the actual unit counts, a 'reasonable consumer' could not be misled." Id. (quoting Kennard, 2019 WL 1586022, at *11 (collecting cases); see also Buso, 445 F. Supp. 3d at 1038 (collecting cases). It next reasoned that "a scoop of protein powder is inherently less comprehensible and tangible than 'one cookie' or 'ten chips' or even 'one 8-inch square loaf of cornbread.'" Id. Reliance distinguished "other protein powder slack fill cases" where there was no "disclosure of actual unit accounts" because, on the facts alleged, the packaging "attempts to 'quantify' the powder." Id. at *3 (citations omitted). Nonetheless, the plaintiff alleged how "the attempted quantification is insufficient to dispel the deception caused by the size and amount of slack fill in the container." Id. Although the "rear" nutrition label stated that one serving equaled one scoop or 30 grams and that there were 15 scoops per container, and the "side" label instructed consumers to add one scoop of powder to 10-12 ounces of water and mix, she explained how it is "unreasonable to expect a consumer to pick up the container, turn it around to see the rear nutrition label, turn it further to see the side preparation label, calculate from this information how many drinks can be made, and understand that the powder in the container yields about 15 10-to-12-ounce beverages." Id. "Rather, she says, consumers will rely on the size of the container to understand how much protein powder they get with each purchase." Id. These allegations were sufficient to conclude that "there is no clear statement of yield provided in a way a reasonable consumer would understand," unlike cases holding, for example, that a container would yield "12 muffins" or an "8-inch square" bread. See id. at *4 (citations omitted).

Reliance then adopted Judge Thompson's attempt to reconcile the reasoning and holdings of slack fill cases by noting that "courts consider whether the label conveys to a reasonable consumer the quantity in the pack in units that are relevant for the type of product." Id. (quoting Sinatro, 2023 WL 2324291, at *11). For example, in Sinatro, the nutrition label "clearly stated that there was one cup of prepared macaroni per serving and two to three servings . . . per container," which meant a reasonable consumer could not be deceived because "cups of cooked macaroni were the unit most relevant to consumers of macaroni." Id. at *4. Applying that logic, Judge Orrick found it "plausible that the number and size of beverages that can be made from protein powder are the units most relevant to consumers of protein powder—rather than, as Reliance seems to suggest, the volume or weight of the total powder in the container." Id. The reason the plaintiff thus stated a claim was because she "pleads that the label does not *specifically* state how many beverages of what size can be made from the powder; indeed[,] given that the information appears in different parts of the label and uses different units, it differs from the clear yield on the labels" in other cases, and a reasonable protein powder consumer could be deceived by the packaging. Id. Judge Orrick also clarified that he "[does] not find that rear labels always or never dispel deception created by the front label or package seize. Rather, as pleaded here, [the plaintiff] asserts that a reasonable consumer would not look at the rear label information that uses one unit, then the side label information that uses another unit, then synthesize the information into a third unit that makes a powder product tangible and quantifiable for a reasonable consumer to easily understand. That is sufficient to state a claim at this stage." Id. at *4 n.4.

Even setting aside for a moment the additional reasons cited by Defendant that a reasonable consumer would not be misled by the Product's packaging—a consumer can see through the packaging to observe how full it is and can see and hear the same by handling the Product—Reliance, 2023 WL 2989039 explains why the SAC does not plausibly allege that reasonable consumers are likely to be misled by the Product's packaging. In Reliance, the protein powder product (1) did not provide the number of servings on the front of the container, but rather just the net weight; (2) as such, the consumer would have to turn the container around to see the rear nutrition label in order to find that a serving equals a scoop of 30 grams and that there are 15 scoops per container; (3) the consumer would then have to turn the product again to look at the side label in order to see that a drink would be made by mixing one scoop with 10-12 oz. of liquid; and (4) that, as a result, the label does not specifically "state how many beverages of what size can made from the powder" because the information "appears in different part of the label and uses different units," which meant there was "no clear statement of yield." See id. at *3-4. Here, the salient features of the Product's label are the opposite: the Product clearly states, in bold writing on the front of the package (in a colored circle, further differentiating it from the label background), that it contains "21 servings," in addition to the net weight of 1.8 lbs. or 819 grams; on the side and back it states that a serving contains 24 grams of protein; its nutrition label explains that a serving size is "1 scoop" of 39 grams of protein powder, while there are 21 servings in the container; and on the back, the Product's "suggested use" states that a consumer should "mix 1 scoop (1 serving) with up to 8-10 10 oz (300 mL) of water or beverage of choice[.]"

(See RJN Ex. A.)³ As such, unlike in Reliance, 2023 WL 2989039, a consumer does not need to do any math or turn the container at all to understand how many servings are contained inside: the Product states prominently on the front that it contains 21 servings.  The Ninth Circuit has explained that, at least in some product markets, "no reasonable consumer expects the weight or overall size of the packaging to reflect directly the quantity of product contained therein." Ebner, 838 F.3d at 967.  The Court, drawing on its "judicial experience and common sense" when applying the reasonable consumer test at the pleadings stage, see id. at 963, finds that reasonable consumers of protein powder do not merely look at the size of the container to anticipate the amount of the contents therein.  While the size of the container may certainly be relevant to a consumer's expectations of how much protein powder is inside of it, see Reliance, 2023 WL 2989039, at *3, consumers, and courts assessing the behavior of reasonable consumers, "consider[] the packaging as a whole."  Id. n.3.  It follows that, in some slack fill protein powder cases, "the labels on the containers . . . [are] sufficient to dispel the deception" posed by the container size and use of slack fill, while in other cases the labels are insufficient.  See id. at *3. Unlike the labeling in Reliance, 2023 WL 2989039, the labeling here is sufficient to "dispel" any misconception from the size of the container.  The Court finds that "the number and size of beverages that can be made from protein powder are the units most relevant to consumers of protein powder[.]"  Reliance, 2023 WL 2989039, at *4. And in this case, the Product's packaging, most notably its prominent front-labeling but also its clear and consistent statements on the rear label, establish a "clear statement of yield provided in a way a reasonable consumer would understand[.]"  Id.

That is also why this case is different from some of the other protein powder slack fill cases discussed in Reliance, 2023 WL 2989039.  As Judge Orrick has explained, in Padilla v. Whitewave Foods Co., 2019 WL 4640399 (C.D. Cal. July 26, 2019) and Barrett v. Optimum Nutrition, 2022 WL 2035959 (C.D. Cal. Jan. 12, 2022), the labels did not "quantify" the powder contained inside because they only "contained information about grams or ounces, serving sizes and number of scoops," but did not show that "one scoop makes one 10 to 12 ounce beverage, and there are there are [a specific number of] scoops per container."  Taylor Costa v. Reliance Vitamin Co, Inc., Case No. 3:22-cv-04670-WHO (N.D. Cal.), Order Re: Motion to Dismiss, Dkt.

---

³ As such, the reality of the packaging directly contradicts some of Plaintiff's allegations in the SAC, such as "[t]he other information that Defendant provides about the quantity of powder on the front and back labels of the Product does not enable reasonable consumers to form any meaningful understanding about how to gauge the quantity of contents of the Product as compared to the size of the container itself.  For instance, the front of the Product's packaging does not have any labels that would provide Plaintiff with any meaningful insight as to the amount of nutrition supplement/powder to be expected, such as a fill line."  (SAC ¶ 23.) Plaintiff's allegations are only true if one ignores all the information about the number of servings, that one scoop is 39 grams and equal to one serving, that one scoop is mixed with 8-10 oz. of water to make a drink, and so forth.  The Court does not ignore this information because the reasonable consumer test does not allow a plaintiff to state a claim by viewing a label "in an unreasonable manner."  Ebner, 838 F.3d at 965.

No. 23, at 13.[4]  In Barrett, 2022 WL 2035959, the label only disclosed the "net weight and number of 'scoops,'" which Judge Gee reasoned still left "room for confusion," since a "'scoop' of protein powder is not an intrinsically meaningful metric of quantity" and a "label that states a cannister contains 20 scoops of protein powder communicates materially less information to a consumer than a label stating that a cannister contains 20 cookies." Id. at *3 (quoting Padilla, 2019 WL 4640399, at *12).  And unlike in Barrett, 2022 WL 2035959 or Padilla, 2019 WL 4640399, a consumer need not "calculate the approximate weight of each scoop." Barrett, 2022 WL 2035959, at *3.  Once again, here no math is required, or even any diligent scrutiny of the container: the consumer need only look at the front of the Product container to be apprised of how many servings she can expect.  That makes this case more like Miao Xin Hu v. Iovate Health Scis. U.S.A. Inc., 2018 WL 4954105 (S.D.N.Y. Oct. 12, 2018), in which a court, applying a virtually identical test under New York law (whether the allegedly deceptive packaging was "likely to mislead a reasonable consumer acting reasonably under the circumstances") observed that the product package "discloses, in large, color-differentiated font, the actual amount of protein powder in each package" and "given the prominence of this information" held "as a matter of law[] that the allegedly nonfunctional slack-fill would not mislead a reasonable consumer acting reasonably under the circumstances." Id. at *3 (citation omitted).

      Analogous cases beyond the protein powder context support Defendant's argument.  As noted above, applying Ebner, 838 F.3d 958, "many district courts have found that where the package itself discloses the actual unit counts, a 'reasonable consumer' could not be misled." Kennard, 2019 WL 1586022, at *5 (collecting cases); see also Buso, 445 F. Supp. 3d at 1038 (collecting cases).  This is especially true where, as here, "the Product's front label provides consumers with the Product's net weight as well as the number of servings in each container in a font and color differentiated from the label background." (Motion at 17.)  See, e.g., Hu, 2018 WL 4954105, at *2 ("Several courts . . . have held that reasonable consumers would not be misled by nonfunctional slack-fill as a matter of law where the products clearly disclosed the accurate net weight and/or the total product count."); Kennard, 2019 WL 1586022, at *5 (finding that, where it was undisputed that the "product packaging discloses the product's net weight, the number of fries per serving, and the approximate number of servings per container" and these representations "do not contradict other representations or inferences from defendant's packaging" such as "words, pictures, or diagrams adorning the packaging," a reasonable consumer could not be misled) (citation omitted); Martinez-Leander, 2017 WL 2616918, at *8 (finding that, "even if Plaintiff had pled sufficient facts to show that Defendants' packaging constituted nonfunctional slack fill," the alleged facts did not "show that a reasonable consumer could have been misled by the packaging" because "Defendants have listed the exact number of pills each bottle contains on the labels of the both the external box and the pill container"); Bush I, 2016 WL 5886886, at *5 (dismissing claims where it was undisputed "that the Go-Pak product labels disclose the net weight of included product, as well as the number of

---

[4] Another protein powder case from the Central District of California provides little guidance here, because Judge Kronstadt found that the CLRA and FAL claims were barred by the statute of limitations and did not apply the reasonable consumer test to the plaintiff's claims.  See Matic v. United States Nutrition, Inc., 2019 WL 3084335 (C.D. Cal. Mar. 27, 2019).

cookies or crackers per container"); Daniel v. Tootsie Roll Indus., LLC, 2018 WL 3650015, at *11 (S.D.N.Y. Aug. 1, 2018) (where the weight in ounces and grams "of the candy enclosed is prominently displayed on the front of each Product box, in large sized font and a color differentiated from the package background," "we can easily conclude, as a matter of law, that the slack-fill enclosed in the Products would not mislead a reasonable consumer, as the Product boxes provide more than adequate information for a consumer to determine the amount of Product contained therein.").

Thus, even if the Product's packaging was fully opaque and a consumer had no means of discerning how much protein powder was inside of it, its clear and accurate labeling may nonetheless make it unlikely that a reasonable consumer would be misled. But the Court's review of the Product's packaging indicates that, contrary to the allegations in the SAC, it is not fully opaque. Rather, it is translucent, or semitransparent: the container is not a dark color, but a whiteish plastic that, when examined from potentially all but at least most angles, enables a consumer to see how much protein powder is inside of it. While it does not appear that a consumer can look through the label that wraps around much of the container, the label only partially covers it, revealing the container's contents in many places. When viewed from the side or the bottom, a consumer can easily see how much protein powder is inside. As such, even if an "average consumer spends only 13 seconds deciding whether to make an in-store purchase" (SAC ¶ 17), as long as the prospective purchaser spends a few seconds looking at the container from more than one angle and/or picks it up (preferably in the service of reading the front or back labels as well), she is virtually certain to notice that the container contains slack fill, and therefore is not likely to be misled by it.[5]

Given the accurate labeling and additional ability of the consumer to see or feel the approximate contents contained the Product, perhaps the most analogous authority is Macaspac, 2018 WL 2539595. As Ms. Gamez does here, the plaintiff in Macaspac alleged that a product, "Purex Crystals" in-wash fragrance booster, contained an unlawful amount of slack fill. See id. at *1. After taking judicial notice of photographs of the containers, the court found that "no reasonable consumer could have been misled by the Purex bottles, which both allowed consumers to see that the bottles contained slack fill, and accurately reported the aggregate weight of the product inside." Id. at *3. Though the plaintiff argued that "bottles are not fully transparent," and the court appeared to agree with that assessment, Macaspac found that "each bottle is a cylinder that contains a roughly 1-2 inch transparent band along the lower part of the bottle's exterior, and each bottle's bottom is fully transparent." Id. at *5. Moreover, "[u]sing the transparent band and bottom, a consumer can fully see the bottle's contents—including the slack fill inside—by turning the bottle on its side and looking in through the bottom." Id. The court found that the packaging did not violate Cal. Bus. & Prof. Code § 12606(b), which provides that

---

[5] Although the parties do not brief this precise issue, the Court's assessment of the Product indicates that the plastic is unlike the "rigid" container in Barrett, 2022 WL 2035959, at *3, in the sense that it does permit a consumer to "accurately determine the amount of empty space" by handling it, rather than just gain awareness of "*some* empty space in the container when they handle the Product[.]" Id. (emphasis in original).

"[a] container that does not allow the consumer to fully view its contents shall be considered to be filled as to be misleading if it contains nonfunctional slack fill," because even though the bottles "are mostly non-transparent," the statute "does not require packaging to be fully transparent as long as it allows consumers 'to fully view its contents.'" Id. at *6. Macaspac reasoned that "excessive slack fill may sometimes prove deceptive in products with non-transparent packaging despite accurate labeling indicating the product's weight" (citing Escobar v. Just Born Inc., 2017 WL 5125740 (C.D. Cal. June 12, 2017), but "no person could reasonably expect a bottle to be full or nearly full when they can look inside and see that it is not." The court thus found that "the bottles themselves make 'it impossible for [the plaintiff] to prove that a reasonable consumer was likely to be deceived'" and dismissed the UCL, FAL and CLRA claims without leave to amend. Id. at *6 (quoting Williams, 552 F.3d at 939). The same reasoning would apply here, especially because, based on the Court's review of the descriptions in Macaspac and the photographs attached to the order, the Product's container appears to be even more translucent than the Purex Crystals bottles, which were red and covered in an opaque label that appears to have wrapped entirely around the mid-section of the bottles. Once again, here the Product's container is a lighter shade, enabling a better view of what is inside, and the label does not extend all the way around the container.

Contrary to Plaintiff's argument, this case is not like Williams, 552 F.3d 934, for the same reasons it was distinguished by Ebner, 838 F.3d 958. (See Opposition at 7-10.) In Williams, the plaintiffs (parents of toddlers) alleged that Fruit Juice Snacks (a product for toddlers) were packaged deceptively because the two primary ingredients were sugar and corn syrup and the only fruit or juice content was white grape juice from concentrate, while the product was named Fruit Juice Snacks, had images of (non-grape) fruits on the box, stated it contained "fruit juice and other natural ingredients" and was "specifically designed to help toddlers grow up strong and healthy." See id. at 936-39. The Ninth Circuit held that a reasonable consumer could be misled into believing that the product contained the fruits pictured on the front and all the ingredients were natural, when that was false; its oft-cited holdings are that an ingredient list cannot be used as a "shield for liability for the deception" and that a reasonable consumer is not "expected to look beyond misleading misrepresentations on the front of the box to discover the truth from the ingredient list in small print on the side of the box." Id. at 939. "Stated straightforwardly, Williams stands for the proposition that *if* the defendant commits an act of deception, the presence of fine print revealing the truth is insufficient to dispel that deception." Ebner, 838 F.3d at 966. But in Ebner, "unlike in Williams, there is no deceptive act to be dispelled" because the "weight label does not contradict other representations or inferences on [the] packaging." Id. Moreover, "[a]part from the accurate weight label, there are no other words, pictures, or diagrams adorning the packaging, as there were in Williams, from which *any* inference could be drawn or on which *any* reasonable belief could be based" that, in essence, the "label is false, deceptive or misleading." Id. The instant case is closer to Ebner than Williams, for it is not one in which the product's front label contained misrepresentations and the defendant attempted to apply the "small print" ingredient list on the side of the container as a "shield for liability for the deception" created by the front of the container. Williams, 552 F.3d at 939. To the contrary, the Product's label contains a truthful statement of the weight and number of servings on the front, while the rest of the label corroborates and clarifies that accurate

statement. See Bush I, 2016 WL 5886886, at *3 ("Here, like in Ebner and unlike in Williams, . . . the Go-Pak product's weight label and nutrition facts panel do not contradict other representations on or inferences from Mondelez's packaging" because "[a]part from the accurate weight label and serving size statement," "no other words, pictures or diagrams" would have misled a consumer) (citation omitted).

For these reasons, the Court finds that the SAC fails to allege "a probability 'that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'" Ebner, 838 F.3d at 965 (citation omitted). As such, all three of Plaintiff's claims fail under the reasonable consumer test and are subject to dismissal on that basis.

## B. UCL "Unlawful" Prong Violation Predicated on Cal. Bus. & Prof. Code §§ 12606, 12606.2; 21 C.F.R. § 100.100

Plaintiff appears to argue that she can state a claim under the "unlawful" prong of the UCL, regardless of application of the reasonable consumer test, by demonstrating that the Product has violated one or more statutes or regulations regarding slack fill practices. (See Opposition at 16-17.) The Court proceeds on the assumption that Plaintiff is correct and also rejects this alternate basis for liability.[6]

---

[6] Specifically, at the conclusion of the Opposition, Plaintiff briefly argues that the reasonable consumer test does not apply to Plaintiff's UCL claim brought under the "unlawful" prong. (Opposition at 16-17.) Plaintiff relies upon a statement from an unpublished Ninth Circuit opinion that observed, "[t]he best reading of California precedent is that the reasonable consumer test is a requirement under the UCL's unlawful prong only when it is an element of the predicate violation." Bruton v. Gerber Prod. Co., 703 F. App'x 468, 471–72 (9th Cir. 2017). In Bruton, "the predicate violation [was] of California's Sherman Law, see Cal. Health & Safety Code §§ 110760, 110765, which itself incorporates standards set by FDA regulations"; those FDA regulations "include no requirement that the public be likely to experience deception." Id. at 472. The SAC does not allege that Plaintiff's UCL claim is predicated on California's Sherman Law, but rather California's FAL, CLRA and 21 C.F.R. § 100.100. (See SAC ¶¶ 86, 94.) Bruton itself cites Consumer Advocates v. Echostar Satellite Corp., 113 Cal. App. 4th 1351, 1354 (2003) for the proposition that "UCL claims were subject to the reasonable consumer test where the predicate violations were of the FAL and CLRA, both of which require meeting the reasonable consumer test." 703 F. App'x at 472. Under Ninth Circuit precedent, "predicate" violations of the FAL, CLRA and UCL are all governed by the reasonable consumer test. See Williams, 552 F.3d at 938; Freeman, 68 F.3d at 289; Viggiano v. Hansen Nat. Corp., 944 F. Supp. 2d 877, 885 (C.D. Cal. 2013) (applying reasonable consumer test to CLRA claim). The Court holds above and below that the Product does not violate any of the putative bases for a UCL "unlawful" prong violation referenced in the SAC, including 21 C.F.R. § 100.100, so Plaintiff's UCL clam accordingly fails well. To the extent the Court should generously construe the allegations in the SAC as asserting a UCL violation based on the California Business &

Section 12606 of the California Business and Professions Code provides that "[n]o container shall be made, formed, or filled as to be misleading. A container that does not allow the consumer to fully view its contents shall be considered to be filled as to be misleading if it contains nonfunctional slack fill." Cal. Bus. & Prof. Code § 12606. Similarly, Section 12606.2 of the California Business and Professions Code provides that "no food containers shall be made, formed, or filled as to be misleading" and "[a] container that does not allow the consumer to fully view its contents shall be considered to be filled as to be misleading if it contains nonfunctional slack fill." Cal. Bus. & Prof. Code § 12606.6(b),(c). These regulations parallel a regulation promulgated by the Food and Drug Administration (FDA) at 21 C.F.R. § 100.100, which provides that "[a] container that does not allow the consumer to fully view its contents shall be considered to be filled as to be misleading if it contains nonfunctional slack-fill." 21 C.F.R. § 100.100. As Plaintiff herself observes, "the applicable legal standard under both federal and California law is whether the container allows the consumer to 'fully view its contents' or not." (Opposition at 13.)

For the reasons discussed above, the Court finds that the Product does not violate any of these provisions. Although Defendant has not set forth any explanation for the presence of the slack fill or attempted to justify it, it has argued persuasively that the Product still allows a consumer to "fully view" the contents inside. While the Product is not fully transparent, the relevant provisions "do[] not require packaging to be fully transparent as long as it allow consumers to 'fully view its contents.'" Macaspac, 2018 WL 2539595, at *6. As in Macaspac, the Product is not fully opaque; it is translucent or semitransparent, allowing the consumer to view its contents. See 2018 WL 2539595, at *6. As such, Plaintiff "cannot maintain a claim under the UCL's unlawful prong predicated on a violation of" any of these provisions. Id.

---

Professions Code statutes discussed above, even though it alleges no such thing, the Court's holdings below also defeat the claim. In any event, the Court is not entirely persuaded that Plaintiff could have stated a claim without application of the reasonable consumer test. 21 C.F.R. § 100.100, promulgated pursuant to the Food, Drug, and Cosmetic Act ("FDCA"), does not create a private right of action, but plaintiffs may seek relief "pursuant to related state-law causes of action." Benson v. Fannie May Confections Brands, Inc., 944 F.3d 639, 645 (7th Cir. 2019). Courts inside and outside the Ninth Circuit appear to assess nonfunctional slack fill claims raised on state law causes of action that rely upon, in part, 21 C.F.R. § 100.100 under the "'reasonable consumer' standard to analyze the likelihood of deception" because they require a showing that slack fill "creates a likelihood of deception or has the capacity to deceive." Id. at 464 (citations omitted); see also Bush I, 2016 WL 5886886, at *4 (rejecting claim that packaging violates 21 C.F.R. § 100.100, purportedly based in turn on a claim for "unlawful packaging under the 'unlawful' prong of the UCL" because the plaintiff's claims failed the reasonable consumer test and thus he had not pleaded "reasonable reliance" on the packaging, and "even claims based on unlawful misrepresentations require a showing of reasonable reliance under the UCL") (citation omitted).

Because all three of Plaintiff's causes of action fail the reasonable consumer test and the Product does not violate California or federal slack fill statutes or regulations, the Court **GRANTS** the Motion and **DISMISSES** the SAC in its entirety.

### C. Leave to Amend

The only remaining question is whether to dismiss the SAC with or without leave to amend. Plaintiff has already amended the pleadings twice. More importantly, the deficiencies discussed above cannot be cured by pleading additional or different facts, for Plaintiff's claims fail as a matter of law based on an assessment of the Product's packaging as a whole, which cannot be changed through amended pleadings. See id. at *6 ("No amount of additionally pleaded facts could change the features of the Purex bottles that render them non-deceptive. The Court accordingly denies leave to amend and dismisses the complaint with prejudice."); Workman, 141 F. Supp. 3d at 1037 ("[A]s this order finds that the labels at issue are not deceptive, and the labels themselves cannot be changed by a new complaint, any amendment would be futile."); Kennard, 2019 WL 1586022, at *7 (dismissing CLRA, UCL and FAL claims without leave to amend after finding plaintiff's theory that the "reasonable consumer would be deceived as to the amount of fries in an Alexia product" inherently implausible); Davis, 693 F.3d at 1171 (upholding dismissal of complaint in its entirety, including FAL and UCL claims, with prejudice); Ebner, 838 F.3d at 966-68 (upholding dismissal of UCL, CLRA and FAL claims with prejudice). The Court dismisses the SAC **WITHOUT LEAVE TO AMEND**.

## V. CONCLUSION

For the reasons above, the Court **GRANTS** Defendant's Motion and **DISMISSES** the SAC in its entirety **WITHOUT LEAVE TO AMEND**. The May 8, 2023 hearing is **VACATED**. The Clerk is directed to close the case.

**IT IS SO ORDERED.**